EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

David Kircher,
    Plaintiff

v.

City of Ypsilanti,
Cheryl Farmer, Mayor of Ypsilanti,
Charles Boulard, Building Inspector of Ypsilanti,
Jon Ichesco, Fire Marshal of Ypsilainti,
Robert Barnes,
Donald Shelton, Washtenaw Co. Circuit Judge,
Timothy Connors, Washtenaw Co. Circuit Judge, and
    Defendants

7/6

04 - 72449

Judge Rosen

EX. A-M

_____

George E. Ward P21970
Attorney for Plaintiff
1100 Buhl Building
Detroit, MI 48226
313-962-0643

_____

## First Amended Verified Complaint for Civil Rights Violations, Preliminary Injunction and Demand for Jury Trial

For his First Amended Verified Complaint, pursuant to F. R. Civ. P.15(a),

Plaintiff says:

1.    Plaintiff Kircher is a graduate engineer of the University of Michigan, a

licensed electrical mechanical contractor and licensed master electrician,

and a former Ypsilanti City council member, who lives, and does business,

in Washtenaw County, state of Michigan.

2.    Defendant City of Ypsilanti ("Ypsilanti") is a municipality located in

Washtenaw County, state of Michigan.

3.    Defendant Cheryl Farmer is the Mayor of Ypsilanti.

4.    Defendant Charles Boulard is the Building Inspector of Ypsilanti.

5.  Defendant Jon Ichesco is the Fire Marshal of Ypsilanti.

6.  Defendants City, Farmer, Boulard and Ischeco are "state actors," and are sometimes referred to hereinafter as "Ypsilanti Defendants."

7.  Defendant Robert Barnes is an Ypsilanti landlord* and, with respect to the conduct complained of, has acted under color of law, as receiver and as contractor and agent of, and in concert with, Defendant Ypsilanti.

8.  Defendant Donald Shelton is a Washtenaw County Circuit Judge.

9.  Defendant Timothy Connors is a Washtenaw County Circuit Judge.

10. This court has jurisdiction of the federal questions presented, arising on 42 USC 1983, under 28 USC 1331.

## COMMON ALLEGATIONS

11. Plaintiff, a former Republican council member in the Democratic strong-hold of Ypsilanti, is the owner -- free and clear -- of several rental properties in Ypsilanti, including

    - the apartment house at 510 W. Cross Street;

    - the apartment house at 304-306 Perrin St; and

    - the Thompson building at 400-412 River St.

12. Plaintiff is constitutionally protected against being deprived of his interests in this property without due process of law.

---

* "'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,'" quoting *United States* v. *Price*, 383 U.S., at 794." *Lugar v. Edmundson Oil*, 457 U.S.922, 941.

13.  These principles are fundamental:

> a.  "Without due process of law the right of private property cannot
> be said to exist;
>
> b.  "Whatever else may be uncertain about the definition of the term
> 'due process of law,' all authorities agree that it inhibits the
> **taking of one man's property and giving it to another**…".
>
> *Geftos v. City of Lincoln Park*, 196 NW2d 169, 172-3 (Mich.
> App. 1971), quoting Justice Pitney in *Ochoa v. Morales*, 230
> U.S. 139, 161 (1912).

14.  Contrary to the above principles, Defendants, under color of law, are

wrongly trying to transfer Plaintiff's above private properties to another

private owner, because Plaintiff Barnes has not acceded to their demands

that his properties be reconfigured and upgraded, while the latter, Defen-

dant Barnes, is a City Hall favorite, and is willing to reconfigure and

upgrade the properties as demanded by the City.

15.  Defendants' strategy for doing indirectly what they are constitutionally

prohibited from doing directly has 3 elements:

> a.  Upon circuit court complaints purportedly relying upon MCL
>
> 29.23 of the state's fire prevention code -- which does not, and
>
> constitutionally could not, authorize a City to force an owner to
>
> reconfigure and upgrade his property -- Defendant Judges have
>
> taken possession of private properties worth in excess of one
>
> million dollars from the owner (Plaintiff) and given indefinite pos-
>
> session of the properties to Defendant Barnes -- knowing full
>
> well that reconfiguring and upgrading are the Ypsilanti

Defendants' real purpose -- in flagrant violation of constitutional and Michigan law, as follows:

    i.    The jurisdictional predicate of MCL 29.23 -- namely, the existence of fire hazards determined by the state fire marshal to be "dangerous or menacing to human life so that public safety requires its immediate abatement" -- has **not** been established;

    ii.    The court orders transferring possession to Defendant Barnes are unconstitutionally vague and nonspecific, leaving to Defendant Barnes' discretion to decide what repairs to make, despite MCL 29.23's requirement that the Judge himself, after notice to Plaintiff and opportunity to be heard, specify both "in what manner and to what extent" the repairs, if any, shall be made; and

    iii.    The requirement of MCL 600.2926 that a bond and a specification of powers and duties has been ignored.

b. During the 2 years that Defendant Barnes has possessed Plaintiff's properties, Defendant Barnes has made expenditures on such repairs and in such amounts as he alone has chosen, without direction or guidance from the court, and without the constitutionally required advance notice to Plaintiff of his claim of a need therefor and an opportunity to be heard thereon, and De-

4

fendant Barnes is now demanding reimbursement in the amount
in excess of $600,000.

c. In furtherance of the Ypsilanti Defendants' unconstitutional "tak-
ing" strategy, Defendant Judges are refusing to return posses-
sion to Plaintiff Kircher unless he pay Defendant Barnes' reim-
bursement demands for repairs and expenditures made in total
violation of Plaintiff's right to constitutional due process of notice
and hearing.

16. Defendants lack of lack of good faith in invoking the state fire code, indeed
in invoking any building maintenance code, as the pretext for transferring
possession of Plaintiff's properties to Defendant Barnes and forcing a
reconfiguration and upgrading of Plaintiff's properties is manifest from
Defendant Barnes' actions pursuant to the constitutionally deficient and
non-specific state court orders on which his possession is based:

a. In the case of 510 W. Cross St., Defendant Barnes undertook a
gut rehabilitation as shown in the pictures taken in February,
2004 (Exhibit A) and in now demanding reimbursement in
excess of $250,000.

b. In the case of Plaintiff's Thompson Building at 400-412 River
St., after being put in possession, Defendant Barnes immediate-
ly announced plans to the local news media, which plans are
wholly outside the intendment of the state fire prevention code
or of any property maintenance code, to "add 6 to 8 luxury

5

apartments on each of the top 2 floors, and put 4 or 5 commer-

cial tenants in the street level" (Exhibit B), and is now demand-

ing reimbursement in excess of $200,000.

c. In the case of 304-306 Perrin St., Defendant Connors has

awarded Defendant Barnes reimbursement in the amount of

$243,000, despite a circuit court complaint establishing a   cost

estimate for reconfiguring and upgrading of $159,000 to make

the property "habitable," which would be far in excess of what is

allowed by the state's fire prevention code, or the City's building

maintenance code, in any event.

17.   Even though Defendant's strategy is blatantly unconstitutinal, the Ypsilanti

Defendants boast about it publicly:

a. *The Eastern Echo*, a newspaper which circulates in Ypsilanti,

ran this notice in the fall of 2002:

> … [Defendant] Barnes, …will…do the work and charge
> Kircher, Kircher will have to pay for the work and a 25
> percent fee to Barnes. Barnes also earns 7 percent interest
> on his capital layout. If Kircher can't or doesn't make the
> payments, **Barnes gets title to the buildings**.

b. Defendant Ypsilanti's attorney, John Gilbreath, has described

this illegal "taking" strategy in open court:

> I came here before, after there were *five* aspects that we
> wanted complied with… at that time we came to the Court
> and said it was $50,000 needed to get done…
>
> [O]ne thing we wanted to ensure was that **if he [Kircher]
> paid the money.. we'd give him a [further] list of things
> to do**…. It was our intention in that this building would be

> brought back to something that would be **economically viable**...
>
> 'At this time, **we don't anticipate that Mr. Kircher is going to pay any of that money back**...' (Tr. in Washtenaw Co. #01-560-CH, 2/11/04, p 5.)

c. As counsel for Mr. Kircher noted at that same hearing:

> "[I]f the **Poletown case** was in Ypsilanti...all they would have done is put GM in as receiver and let it (the property) be reconfigured as a Cadillac plant. And when the people of Poletown couldn't redeem from it, say, oh good, you're out." (p. 11)

18.    Thus, in all three cases, Defendant Barnes has been put in possession of his competitor's (Plaintiff's) properties, for the real purpose of reconfiguring and upgrading those properties, pursuant to constitutionally vague court orders entered in violation of law, because the orders allow Barnes himself *carte blanche* discretion to spend a much as he wishes in the belief that, unless his ex-penses, plus a 25% mark-up and 7% interest, are reimbursed by Plaintiff, he will be the owner, and Plaintiff will not only be stripped of all interest in his private properties, but will be made liable for any deficiencies.

19.    Defendant Farmer, as Mayor, is a chief proponent of Ypsilainti's unconstitutional strategy here complained of to take Plaintiff Kircher's property and give them to Defendant Barnes.

20.    In May 2002, before a scheduled hearing for the appointment of a receiver for the Thompson Building, while Plaintiff and his employees were doing routine maintenance work at that address, Defendant Farmer showed up personally and angrily demanded that the work cease. Defendant Farmer

then attempted to have Plaintiff arrested, but was told there were no grounds for an arrest. Later that day, she sent building inspector Pete Avram to this property, who, acting under her orders, posted "Stop Work" signs on the building, in which condition the building remained for the later hearing on a receiver.

21. Defendant Bouchard has helped implement the unconstitutional stratagem in numerous ways, including by refusing to inspect as shown in Ex. C.

22. Defendant Ichesco is not only hostile to Plaintiff Kircher, but is an old school chum of the contractor, Defendant Barnes, who benefits from this unconstitutional strategy. Defendant Ichesco -- who is Plaintiff in the state court suits which erroneously purport to be based on MCL 29.23 -- has been heard to say "If it's the last thing I do, I want to put Kircher in jail."

23. This suit is based upon 42 USC Sec 1983 which provides remedies for injuries sustained when a private owner is deprived of his federally pro-tected rights of life, liberty or property by "state actors," or those acting in concert with state actors, without due process of law, or -- in this case -- by a long series of violations of due process.

24. **Federal Court as constitutional guardian:**

Defendant Shelton and Defendant Connors -- whose orders have aided the Ypsilanti Defendants' unconstitutional demands for a reconfiguration and upgrading in Plaintiff's properties, by effectively delegating judicial discretion to Defendant Barnes as to "what manner and what extent" repairs are made -- have been joined for the purpose of declaratory and

8

Injunctive relief. As stated at Sec.4224 of Wright, Miller and Cooper, "the

legislative history" shows:

> that the very purpose of that statute (42 USC 1983) was to inter-
> pose **the federal courts as guardians** of the people's federal
> rights against the states and to protect the people from
> unconstitutional action by any branch of state government,
> **including the judicial.**

### Count I

25. The above allegations are here re-asserted.

26. Plaintiff Kircher has owned the 5-unit apartment house at 510 W. Cross

    in Ypsilanti since, at least, 1969. As noted, Plaintiff owns 510 W. Cross,

    free and clear, and before the actions of Defendants here complained of,

    this property had a fair market value in excess of $280,000.

27. Except for Plaintiff 's building, the entire block on which 510 W. Cross is

    located is owned by Defendant Barnes. (Ex. D.)

28. In 2000, Barnes made an offer to Plaintiff to buy 510 W. Cross Street, and

    Plaintiff refused to sell. From that time on, the Ypsilanti Defendants, under

    color of law, have been striving to transfer Plaintiff Kircher's property to

    Defendant Barnes, without due process of law.

28. On May 15, 2001, as noted, Defendant Ichesco, Ypsilanti's fire marshal,

    filed suit in Washtenaw County Circuit Court, under the state's fire preven-

    tion code, purportedly to "raze or abate" Plaintiff's building at 510 W.

    Cross as a "fire hazard" within the intendment of MCL 29.23 ("Cross Street

    suit"), but the real purpose of the suit was to further City's intent to force a

9

reconfiguration and upgrading of the property, and the case was assigned

to Judge Donald Shelton.

29.   As noted, the jurisdictional predicate for such a suit was not shown to

exist, and the statute's requirement that Defendant Shelton himself deter-

mine the types and amounts of repairs to be made was not observed.

MCL 29.23 states, in pertinent part:

> **If the state fire marshal considers** a fire hazard to be imminent-ly
> **dangerous or menacing** to human life so that the public safety
> requires its immediate abatement, removal, correction, or
> discontinuance, **the state fire marshal may bring, or cause to be
> brought**, in the circuit court of the county in which the fire hazard is
> located, an action for **the purpose of abating**, removing,
> correcting, or discontinuing the fire hazard. ...

> The court.... to ensure the safety and security of human life... may
> direct that a building described in the bill of complaint be razed ...**or
> that the building be repaired and in what manner and to what
> extent.** ...

30.   While this suit was pending, on November 21, 2001, Harry Hutchison,

Ypsilanti's DPW director (and former building department official and

licensed building inspector), stated that Ypsilanti would issue Plaintiff an

occupancy permit, if 5 repairs were made, which repairs are set forth in

Hutchison's letter of that date, Ex. E hereto.

31.   Pursuant thereto and in reliance thereon, Plaintiff Kircher undertook re-

pairs to cure the 5 listed defects, and in June of 2002, Plaintiff asked

Defendant Boulard to inspect the building at 510 W. Cross Street, but, as

noted,  Defendant Boulard refused, stating:

> It is my sincere belief that performing the requested inspection
> would be contrary to the **spoken** and written orders of the Court.
> (Ex. C.)

32.   There are no such written orders in the court file of the Cross Street suit, and if "spoken orders" were given by Defendant Shelton to Defendant Boulard not to make building inspections for Plaintiff Kircher, such spoken orders not to inspect were contrary to Ypsilanti's Building Code and must have been given "ex parte," because Plaintiff was never privy to any such spoken orders.

33.   On July 14, 2002, following Defendant Boulard's refusal to inspect and despite Plaintiff's testimony that the repairs had been made, Defendant Shelton entered an Order (Ex. F) in the Cross Street suit ("Abatement Order"), which gave Ypsilanti "exclusive" control of the apartment house at 510 W. Cross St. to make the 5 repairs, without a finding of "dangerous and menacing" fire hazards on the property within the intendment of MCL 29.23.

34.   The Abatement Order did not purport to suspend the Ypsilanti Charter (Ex.G) requiring the published solicitations of competitive bids for construction contracts.

35.   However, given the unconstitutional strategy of "running up" the bill and forcing Plaintiff out by foreclosure, the Ypsilanti Defendants did not comply with the bid-solicitations requirements of its charter; instead, they gave Defendant Barnes the contract on payment terms which are grossly above market rates. (Ex. H).

36.   In early 2003, Defendant Barnes presented his demand for reimbursement of $54,345.

37.    But the Ypsilanti Defendants were still not satisfied. As the strategy de-
scribed by Mr. Gilbreath in par 17(b) contemplated, the Ypsilanti Defen-
dants then demanded still more repairs on the pretext of making the pro-
perty "economically viable."

38.    Without reviewing Defendant Barnes' demand of $54,325 for reason-
ableness and appropriateness, and without giving Plaintiff Kircher an
opportunity to be heard in opposition, Defendant Shelton entered his se-
cond Order of April 3, 2003 (referred to hereinafter, for obvious reasons,
as the "Debt-Collection" Order) implicitly finding that, although "**posses-
sion of the property**" could safely be **"returned to Defendant Kircher;"**
he would endorse the "economic viability" goal of the City for 510 W.
Cross, and thus arbitrarily and capriciously authorized further expendi-
tures, as follows:

> If the $54,345.74 is not paid within the required 30 days, then the
> City, or its designated agent, shall **continue to effectuate the
> repairs** necessary to obtain a certificate of occupancy. (Exhibit I.)

39.    There is no authority to enforce "economic viability" under fire or building
codes, and no legal requirement that a vacant building have a certificate of
occupancy; and the trial judge, having implicitly found that all fire hazards
were removed, acted unconstitutionally in simply allowing the city and
Barnes to continue to "run up" the bill for the cost of reconfiguring and
upgrades.

40.    Yet, the Debt-Collection order is pivotal to Defendants' unconstitutional
"taking" strategy.

41.    The Ypsilanti Defendants then granted Defendant Barnes another grossly excessive contract, without competitive bids, "to continue to effectuate" unspecified repairs with the intent of finally putting redemption of 510 W. Cross Street by Plaintiff Kircher beyond reach.

42.    The Debt-Collection Order has been construed by Defendants as consummation of their unconstitutional plan to force reconfiguring and up grades, and to give 510 Cross Street to Defendant Barnes without due process of law, as evidenced by the following:

      i.     Applications for special use permits are limited to a property's owner, the Ypsilanti Defendants -- acting under the "Debt-Collection" Order – have allowed Defendant Barnes to gut the property, and on March 17, 2004 granted him a special use permit to reconfigure it for an alto-gether different use, a fraternity/sorority house. (Ex. J.)

      ii.    Most importantly from a constitutional point of view, all changes made to 510 W. Cross pursuant to the Debt-Collection Order were made by Defendant Barnes without court direction or guidance and without advance notice to Plaintiff owner of the alleged need therefor or opportunity to be heard in opposition thereto; yet, Defendant Barnes is now demanding payment in excess of $150,000 as a condition to Plaintiff's being restored to his property.

13

      iii.     Despite the fact that there is no authority for the creation of a lien to secure the expenses of reconfiguring and upgrading private property, and the further fact that there is no provision for the foreclosure of such a lien in any event, Defendant Shelton has granted summary judgment of foreclosure. (Ex. K.)

43.    Because the Ypsilanti Defendants and Defendant Barnes' actions in gutting 510 W. Cross are wholly beyond the scope of the state's fire code, and of any other law or ordinance, the Ypsilanti Defendants and Defendant Barnes are naked trespassers upon 510 W. Cross Street and liable as such.

44.    Further, during all the time that exclusive control of 510 W. Cross Street has been with the Ypsilanti Defendants and Defendant Barnes, Plaintiff has been deprived of all rents and incomes, but has had to bear the property taxes and other expenses.

45.    As a direct result of Defendants' repeated violations of constitutional due process under color of law, and the destructive trespass and loss of rents and other income occasioned thereby, Plaintiff Kircher has been damaged by the Ypsilanti Defendants and Defendant Barnes in an amount in excess of $75,000.

**Wherefore,** Plaintiff Kircher asks for declaratory and injunctive relief restoring possession and control of 510 W. Cross Street to Plaintiff Kircher, and for judgment against the Ypsilanti Defendants and Defendant Barnes, jointly and

severally, as provided by Michigan law, in triple the amount shown as actual damages as above described, as well as any and all such other relief as Plaintiff may herein show himself entitled under any other law or precedent, together interest, costs and reasonable attorneys fees.

### Count II

46.   The above allegations are here re-asserted.

47.   As noted, in 2002, Defendant Ichesco, Ypsilanti's fire marshal, filed suit in Washtenaw County Circuit Court, under the state's fire prevention code, purportedly to "raze or abate" Plaintiff's Thompson St. Building as a "fire hazard" within the intendment of MCL 29.23, but actually in furtherance of the City's intent to force a reconfiguration and up-grading of the property, and the case was assigned to Judge Donald Shelton.

48.   The jurisdictional predicate for such a suit was not shown to exist. See, again, paragraph 29 above.

49.   On June 14, 2002, Defendant Barnes was given possession of Plaintiff's Thompson Street Building as Receiver upon an order (Exhibit L) that violated the statute's requirement that Judge Shelton himself determine the types and the amounts of repairs to be made. The Order purports to allow Defendant Barnes to expend as much as he chooses to make the Building "economically viable," and to seek reimbursement from Plaintiff therefor.

50.   When measured by the requirements of MCL 29.23, as well as of the

15

City's building maintenance code, Defendants' lack of good faith is mani-
fest from Barnes' boasts to the Ann Arbor News that he would "add 6 to 8
luxury apartments on each of the top 2 floors, and put 4 or 5 commercial
tenants in the street level." (Exhibit B.)

51.    During the two years of Defendant Barnes' possession of the Thompson
       Building, Plaintiff has been barred from entering the premises, and Defen-
       dant Barnes has been allowed unfettered discretion as the repairs he will
       make and the amounts he will spend.

52.    Most importantly from a constitutional point of view, in the case of each
       repair Defendant Barnes has made to the Thompson Building, he has
       done so without direction or guidance from the court, and **without the
       constitutionally required advance notice** to the Plaintiff owner of an
       alleged need for such a repair, or an opportunity to be heard in opposition
       thereto; yet, Defendant Barnes is now demanding reimbursement in
       excess of $200,000.

53.    Because Defendant Barnes' actions in making repairs to reconfigure and
       upgrade the Thompson Building – e.g., to "add 6 to 8 luxury apart-ments
       on each of the top 2 floors, and put 4 or 5 commercial tenants in the street
       level" – are wholly beyond the scope and purpose of the state's fire code,
       and of any other law or ordinance, Defendant Barnes is a naked trespas-
       ser at 400-412 River St. and liable as such.

54.    Further, during all the time that exclusive control of the Thompson Building

has been with Defendant Barnes, Plaintiff has been deprived of all rents and Incomes, but has had to bear the property taxes and other expenses.

55.    As a direct result of Defendants' repeated violations of constitutional due process under color of law, and the destructive trespass and loss of rents and other income occasioned thereby, Plaintiff Kircher has been damaged by the Ypsilanti Defendants and Defendant Barnes in an amount in excess of $75,000.

**Wherefore**, Plaintiff Kircher asks for declaratory and injunctive relief restoring possession and control of the Thompson Building at 400-412 River St. to Plaintiff Kircher, and for judgment against the Ypsilanti Defendants and Defendant Barnes, jointly and severally, as provided by Michigan law, in triple the amount shown as actual damages as above described, as well as any and all such other relief as Plaintiff may herein show himself entitled under any other law or precedent, together interest, costs and reasonable attorneys fees.

### Count III

56.    The above allegations are here re-asserted.

57.    As noted, in 2001, Defendant Ichesco, Ypsilanti's fire marshal, also filed suit in Washtenaw County Circuit Court, under the state's fire prevention code, purportedly to "raze or abate" Plaintiff's apartment house at 304-306 Perrin St. as a "fire hazard" within the intendment of MCL 29.23, but actually in furtherance of the City's intent to force a reconfiguration and upgrading of the property, and the case was assigned to Judge Timothy Connors.

58.  The jurisdictional predicate for such a suit was not shown to exist. See,
     again, paragraph 29 above.

59.  This is another property which Defendant Boulard refused to inspect in
     June, 2002, allegedly because of Judge Connors' spoken orders that he
     not inspect. See, again, paragraphs 31-32 above.

60.  Following Defendant Boulard's refusal to inspect, on July 12, 2002, De-
     fendant Barnes was given possession of Plaintiff's Perrin St. property as
     Successor Receiver upon an order (Exhibit M) that  purported to delegate
     to the Receivers the duty to determine the type and amount of repairs to
     be done, and thus violated the statute's requirement that Judge Connors
     himself determine the types and the amounts of repairs to be made.

61.  The Order effectively allowed Defendant Barnes to expend as much as he
     chose to reconfigure and upgrade the Perrin St. property, and to seek re-
     imbursement from Plaintiff therefor.

62.  When measured by the requirements of MCL 29.23, as well as of the
     City's building maintenance code, Defendants' lack of good faith is mani-
     fest from the face of the circuit court complaint which advised that they
     were seeking a reconfiguration and upgrade, not the purposes of the
     statutes cited, as well as from the work actually done.

63.  During the two years of Defendant Barnes' possession of 304-306 Perrin
     St, Plaintiff was barred from entering the premises, and Defendant Barnes
     was allowed unfettered discretion as the repairs he would make and the
     amounts he would spend.

64. Most importantly from a constitutional point of view, in the case of each repair or alteration which Defendant Barnes has made at 304-306 Perrin St., including reconfiguring it from a 4-unit to a 2-unit apartment, Defendant Barnes has made the change, without direction or guidance from the court, and **without the constitutionally required advance notice** to the Plaintiff owner of an alleged need for such a repair, or an opportunity to be heard in opposition thereto.

64. Yet, Defendant Connors has awarded Defendant Barnes judgment for reimbursement of expenses of $243, 103, and has provided that, if the judgment is not paid forthwith, Defendant Barnes may go to foreclosure sale, and hold Plaintiff Kircher liable for any deficiency.

65. Because Defendant Barnes' actions in making repairs to reconfigure and upgrade 304-306 Perrin St. are wholly beyond the scope and purpose of the state's fire code, and of any other law or ordinance, Defendant Barnes is a naked trespasser at 304-306 Perrin St. and liable as such.

66. Further, during the unnecessarily long period that exclusive control of 304-306 Perrin St. has been with Defendant Barnes, Plaintiff has been deprived of all rents and incomes, but has had to bear the property taxes and other expenses.

67. As a direct result of Defendants' repeated violations of constitutional due process under color of law, and the destructive trespass and loss of rents and other income occasioned thereby, Plaintiff Kircher has been damaged

by the Ypsilanti Defendants and Defendant Barnes in an amount in excess
of $75,000.

**Wherefore,** Plaintiff Kircher asks for declaratory and injunctive relief
restoring possession and control of 304-306 River St. to Plaintiff Kircher, and for
judgment against the Ypsilanti Defendants and Defendant Barnes, jointly and
severally, as provided by Michigan law, in triple the amount shown as actual
damages as above described, as well as any and all such other relief as Plaintiff
may herein show himself entitled under any other law or precedent, together
interest, costs and reasonable attorneys fees.

### Count IV

68.    The above allegations are here re-asserted.

69.    Despite that fact that the costs for which reimbursement is demanded
       were run up on vague and unconstitutional court orders entered by De-
       fendants Shelton and Connors without a jurisdictional predicate having
       first been established, for the illegal purpose of forcing a reconfiguration
       and upgrading of Plaintiff's private property; and the fact that no provision
       of Michigan law provides foreclosure of the liens purportedly granted here
       by Defendants Shelton and Connors, and certainly not for the purposes for
       which these sums were incurred, Defendants Shelton and Connors are
       threatening to order Plaintiff's private properties to be auctioned at sheriff's
       sales and to assess deficiency judgments against Plaintiff Kircher, which
       unconstitutional and wholly unauthorized actions will cause Plaintiff
       Kircher permanent and irreparable loss.

**Wherefore**, Plaintiff Kircher asks for a preliminary injunction against Defendants Shelton and Connors, and each of them, restraining them from effectuating sales at auction of Plaintiff's private properties or assessing deficiency judgments against Plaintiff, until the constitutional issues here presented, and Plaintiff's requests for relief, can be adjudicated.

Respectfully,

David Kircher

David Kircher, being sworn, states that he has read the foregoing, and that the facts set forth therein are true to the best of his knowledge, information and belief.

Sworn to and subscribed to before me on _July 9_, 2004

Notary Public
5-14-05

George E. Ward P21970
Attorney for Plaintiff
1100 Buhl Building
Detroit, MI 48226
313-962-0643

21

# EXHIBIT A



510
Cross





































# EXHIBIT B

Ann Arbor News Sat. 8-17-02 page A3

# Thompson building fixes start

## Depot Town structure to get extensive makeover

**BY SUSAN L. OPPAT**
*News Staff Reporter*

Robert Barnes steps out of his Ypsilanti home these days and is mobbed. He picks up his phone and is peppered with questions.

Everyone Barnes knows, and a lot of people he doesn't, all want to know the same thing: What are he and his father, also Robert Barnes, going to do with the Thompson building in Ypsilanti's Depot Town district and when are they going to do it?

For the first time, the father and son have an answer: They're going to fix it. They're going to restore the decaying building once used as a Civil War barracks at the intersection of River and Cross streets.

And they've already begun to do the work.

The younger (Robert) Barnes said this week he and his father hope to restore the building and add six to eight luxury apartments on each of the top two floors, and put four or five commercial tenants on the street-level.

That's what the sign says that the father and son hung on the building this week in time for the Ypsilanti Heritage Festival.

The younger Barnes said this week he and his father hope to restore the building and add six to eight luxury apartments on each of the top two floors, and put four or five commercial tenants on the street-level.

Washtenaw Circuit Judge Donald Shelton appointed Robert C. Barnes, who with his son Robert M. Barnes owns Barnes & Barnes Apartment rentals, as the receiver for the building earlier this summer. Shelton denied building owner David J. Kircher's request for a stay of the receivership during an appeal. Kircher later filed a request for a stay pending appeal at the state Court of Appeals. The judge appointed a receiver after repeated attempts to get Kircher to repair the building failed.

Ellis B. Freatman III, the Barnes' attorney, said Friday that the court has notified him, and Kircher, that the paperwork filed with the appeal was defective. Freatman said Kircher has not responded to that notice.

So the work has already begun, according to Robert M. Barnes.

He said engineers have been inside the building for a preliminary assessment of its condition. He said the building appears to be structurally sound, but needs a new roof, chimneys, brick wall supports, repairs of significant water damage, and repairs to window frames.

Engineers hired by the city to support the city's demand for a receiver under "health and safety" laws noted that the chimneys all have collapsed. They said a significant portion of the mortar in the brick walls is gone and many bricks are falling out.

Police reports last September said several windows popped out of the walls and fell several stories to the ground, narrowly missing children on the sidewalks below.

Freatman said the Barneses also have begun to evict the building's last tenant. He said that effort should be complete next month.

City Fire Marshal Jon Ichesco said workers can then remove debris piled against the walls so engineers can better assess what it will take to rehabilitate the building.

Under the receivership order, the Barneses can bill Kircher for all the work they do. If they aren't paid, they can foreclose on the building.

Robert M. Barnes said the company has sent Kircher a "nominal" first-month bill of less than $5,000. Next month's bill, he said, will be much larger, since it will include payments to the structural engineers.

Meanwhile, Kircher was ordered Friday in 14A-2 District Court to pay $409 in fines and costs, but escaped a jail sentence, when Judge Kirk Tabbey sentenced him for keeping a tenant in a building at 304-306 Perrin St. without a certificate of occupancy from the city.

Kircher has served two jail sentences since spring for violating health and safety codes on several of the two dozen properties he owns in Ypsilanti. Tabbey gave Kircher a 90-day sentence in the Perrin Street case Friday, then suspended it. Kircher will serve no time unless he violates orders to keep the building vacant until he gets a certificate of occupancy. The Perrin Street building also is in receivership, and no one has lived in it for the last year.

*Susan Oppat can be reached by e-mail at soppat@annarbornews.com or at (734) 482-9495.*

# EXHIBIT C



**City of Ypsilanti**

Building Inspection and
Code Enforcement Department

*file*
*304-306 Perrin*

June 25, 2002

To:    Mr. David Kircher

Re:    Construction and Rental Housing Inspections

Dear Mr. Kircher:

Please allow me the opportunity to respond to the plethora of inspection requests you have made of the Building Department over the last several weeks.

| | |
|---|---|
| Address: | 414 Perrin |
| Request: | Cancel rental inspection for 6.18.02 |
| Response: | Request honored. Inspection canceled. Staff verified structure is not occupied. A valid certification will be required prior to occupancy. As a non-certified vacant residential rental Structure we will request YCUA terminate water service in accordance with Ordinance Section 18-155. |

| | |
|---|---|
| Address: | 49 S. Summit |
| Request: | Refrain from scheduling rental inspections. Structure not rented. |
| Response: | Request honored. Inspection canceled. Staff verified structure is not occupied. A valid certification will be required prior to occupancy. As a non-certified vacant residential rental Structure we will request YCUA terminate water service in accordance with Ordinance Section 18-155. |

| | |
|---|---|
| Address: | 400 N. River |
| Request: | Reinspection of structure by Building Inspector Avram |
| Response: | Request cannot be honored. It is my sincere belief that performing the requested inspection would be contrary to the spoken and written orders of the Court. |

| | |
|---|---|
| Address: | 510 W. Cross |
| Request: | Inspection of the chimney of the structure by Building Inspector Avram |
| Response: | Request cannot be honored. It is my sincere belief that performing the requested inspection would be contrary to the spoken and written orders of the Court. |

| | |
|---|---|
| Address: | 304-306 Perrin |
| Request: | Rental inspection of the premises for rental certification. |
| Response: | Request cannot be honored. It is my sincere belief that performing the requested inspection would be contrary to the spoken and written orders of the Court. |

One South Huron Street          Tel (734) 482-1025          www.CityofYpsilanti.com

Address:     304-306 Perrin
Request:     Final electrical inspection.
Response:    Request cannot be honored.  In addition to the fact that  the required
             rough inspection was not performed prior to covering of work, it is my
             sincere belief that performing the requested inspection would be contrary
             to the spoken and written orders of the Court.


   Should any questions arise regarding these or other issues, please feel free to
speak with either myself or Jack Gilbreath.  Thank you.


Respectfully,

Charles Boulard
Building Official

U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only. No Insurance Coverage Provided)*

*Response Const & Rental Housing Inspections*

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 3 94 |

Recipient's Name *(Please Print Clearly) (To be completed by mailer)*
K. Nicholas
Street, Apt. No., or PO Box No.
50 S Summit
City, State, ZIP+ 4
48187

PS Form 3800, February 2000        See Reverse for Instructions

# EXHIBIT D



# EXHIBIT E

November 21, 2001

Mr. David Kircher
50 S. Summit
Ypsilanti, MI, 48197

**Subject: 510 West Cross**

Dear Mr. Kircher

I conducted an inspection of the above address. In discussion with you we have
come to some conclusions that we feel can resolve the problems at this address
related to the Cities required ordinances.

It is my understanding that you agree to install a garage door on the garage on
this property. It is also my understanding that you agree to fill the openings in
the siding where rail post where removed with a decorative wood fixtures.

We also agree that the complete roof of this structure will be replaced with
regard to the shingles. Painting of the East second floor deck will also be
completed. The door to this deck will be maintained in a proper working order.

The stair well from unit four to unit three will be sealed off with studs and
finished drywall at the top of the stairwell. Also the front stairwell will be painted
with light colored paint. I would recommend a beige color.

The attic of this structure will be cleaned of all construction residue and foreign
materials.

In regard to unit five the carpet can be cleaned or removed. The floor should be
in good repair.

It is my understanding that a permit has been issued for the roof repair. This
repair will be considered as all other permits to repair and not to prohibit the
issuing of a C/O. on this property.

I realize it may take some time to obtain the door for the garage in that this door
is a special order. If you will present a work order for the new door and board up
the garage opening we can issue a temporary certificate until the door can be
installed.

A full certificate will not be issued until all of the items in this letter have been
fulfilled. But at certificate will be issued when these items have been completed.

Sincerely

Harry Hutchison
Dir. D.P.W.

# EXHIBIT F



STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW

| | |
|---|---|
| JON ICHESCO, State Certified Fire Marshall and Fire Marshall for the City of Ypsilanti and the CITY OF YPSILANTI | FILE NO. 2001-560-CH<br><br>Hon. Donald Shelton |
| Plaintiffs,<br><br>v | ORDER FOR EXCLUSIVE RIGHT TO REPAIR BUILDING AND FIRE CODE VIOLATIONS |
| DAVID KIRCHER,<br><br>Defendant. | |

| | |
|---|---|
| JOHN S. GILBREATH, JR. P-33945<br>Assistant Ypsilanti City Attorney<br>105 Pearl Street<br>Ypsilanti, MI 48197<br>(734) 481-1234 | Mr. David Kircher<br>In Pro Per<br>50 South Summit Street<br>Ypsilanti MI 48197<br>734 482-5589 |

Dated: _June 14_, 2002     PRESENT: THE HONORABLE
DONALD SHELTON, Circuit Court Judge



**BARR
ANHUT
ASSOC.**
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

105 Pearl Street
Ypsilanti, MI 48197-2611
(734)481-1234
Fax 483-3871

210 E. Huron
Ann Arbor, MI 48104-1913
(734)769-0100

This matter came before the Court for an Evidentiary Hearing on May 28, 2002 concerning property located at 510 West Cross Street, City of Ypsilanti, Washtenaw County, Michigan.

### IT IS ORDERED AS FOLLOWS:

A.     Plaintiff, City if Ypsilanti, has the exclusive responsibility and right for making the repairs as outlined in this order.

B.     Defendant shall provide immediate access to the building and shall not impede, obstruct, or otherwise interfere with the work of the Plaintiff and/or Plaintiff's agents, contractors or assigns, as that entity performs their duties

1

this order.   Defendant shall not enter the premises without first obtaining permission and approval from the city attorney's office for the City of Ypsilanti, in writing.

C.   The Plaintiff, City of Ypsilanti, may employ or contract with Robert C. Barnes or such other individuals, firms, companies, contractors or other entities as shall be reasonably necessary and appropriate to accomplish the appointed task.

D.   The agent, contractor, and/or assigns shall be considered the General Contractor for the appointed tasks.   He shall be paid on a "time and materials" basis for the project, plus a twenty-five (25%) percent mark up as a fee for his services.   By way of example, but not limitation, if a subcontractor charged $1,000 to replace a door, the Plaintiff and/or it's agents, contractors or assigns would be entitled to a $250 fee.

E.   The Plaintiff and/or it's agents, contractors, or assigns shall send monthly invoices to Defendant Kircher which invoices shall be paid within thirty (30) days of mailing.   Invoices which are not paid within thirty (30) days shall be subject to interest at the rate of seven percent (7%) per annum.

F.   Upon completion of the repairs, Plaintiff is hereby granted a lien on the subject property for all fees and cost invoices which have not been paid by Defendant Kircher.   Costs and fees shall include all the labor, materials, permit and inspection costs, administrative costs, and attorneys fees necessary and appropriate to accomplish the appointed task.

G.   In the event Defendant Kircher fails or refuses to pay the Plaintiff and/or it's agents, contractors or assigns in full within thirty (30) days of mailing the final invoice, then the Plaintiff or Plaintiff's agents and/or assigns shall be entitled



BARR
ANHUT
& ASSOC.
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

105 Pearl Street
Ypsilanti, MI 48197-2611
(734)481-1234
Fax 483-3871

210 E. Huron
Ann Arbor, MI 48104-1913
(734)769-0100

2



...able relief including but not limited to foreclosure of the Plaintiff's lien. Foreclosure of the Plaintiff's lien shall be governed by the Michigan Statutes and Court Rules governing judicial foreclosures. The Plaintiff and/or it's agents, contractors or assigns shall be entitled to the actual costs and attorney's fees incurred in the collection of the Plaintiff's fees as described herein. The Defendant is obligated to pay the City of Ypsilanti costs and attorneys fees incurred in conjunction with the enforcement and supervision of this order.

H.      Contractor, prior to commencing work, shall provide at his own cost and expense, the following insurance to the City using insurance companies licensed and/or approved in the state of Michigan, which insurance shall be evidenced by certificates and/or policies as determined by the City. All policies and certificates of insurance shall be approved by the Department of City Manager of the City prior to the start of any work. The Contractor shall maintain at its own expense the following insurance:   worker's compensation; general liability; automobile liability insurance, for both hired automobiles and non-owned automobiles; and any other insurance that the City deems necessary.

I.      The Defendant shall continue to pay all premiums and maintain all liability and hazard insurance on the property. In the event that Defendant does not provide evidence of liability and hazard insurance on the property within 14 days from the date of this order, the Receiver has the obligation and right to obtain and maintain such insurance, charging all premiums to Defendant

J.      The following repairs shall be undertaken by the Plaintiff to bring this property into compliance:

1.      **Garage.**



BARR
ANHUT
ASSOC.
ATTORNEYS AT LAW

105 Pearl Street
Ypsilanti, MI 48197-2611
(734)481-1234
Fax 483-3871

210 E. Huron
Ann Arbor, MI 48104-1918
(734)769-0100

3.

a. Defendant shall install a garage door on the garage, which shall include the necessary resizing of the door to fit a standard door size.

2. **Roof.** The complete roof of this structure shall be replaced which shall include:

a. It will be stripped of all existing roofing including gutters with the material's being disposed of in accordance with all existing state law.

b. All damaged sheathing and framing shall be removed and replaced to insure that new shingling will be secured to a proper substructure.

c. New roofing materials will be installed including underlayment, shingling, valleys, low slope roofing, flashing and gutters. Defendant will be given an array of shingle colors to choose from.

d. Attic vents and louvers will be installed to assure proper roof ventilation.

e. Install furring as required to achieve minimum pitch and do all other such tasks such as installing drip edge and the extention of the soil stake to assure code compliance.

3. **Second Floor Deck.** The east second floor deck shall be painted and repaired including:

a. The installation of a footing below the support post to insure against collapse,

b. Reconstruction of the guardrails to achieve compliance with the current code standards

c. The installation of flashing at the connection of deck to the walls of the building to prevent water infiltration into the structure through the walls.



BARR
ANHUT
& ASSOC
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

105 Pearl Street
Ypsilanti, MI 48197-2611
(734)481-1234
Fax 483-3871

210 E. Huron
Ann Arbor, MI 48104-1913
(734)769-0100

4

**Unit 4.** The stairwell from unit 4 to unit 3 will be sealed off with studs and finished drywall at the top of the stairwell to provide the proper fire rated assembly between units.

5. **Chimney Repairs.** Repair the existing chimney in the basement by removing 32 square feet of deteriorating brick masonry and replacing with new brick. This may require the removal of the previous efforts to repair. This repair is to conform the all existing codes to assure against chimney collapse.

K. A valid certificate of occupancy must be obtained from the building inspection department before any unit in the building may be occupied.

L. All work is to be done in a workmanlike manner and in compliance with all applicable codes.

M. All work must comply with all permit and inspection procedures.

N. The Defendant is not relieved of his obligation to maintain the property, exclusive of the building, but including lawn care, trash, snow removal, etc.

Dated: _June 14_, 2002        /S/

DONALD E. SHELTON, CIRCUIT JUDGE

APPROVED as to form and content notice of entry is waived:

JOHN S. GILBREATH, JR. P-33945
Assistant Ypsilanti City Attorney

DAVID J. KIRCHER, Defendant

BARR ANHUT & ASSOC.
ATTORNEYS AT LAW

105 Pearl Street
Ypsilanti, MI 48197-2611
(734)481-1234
Fax 483-3871

210 E. Huron
Ann Arbor, MI 48104-1918
(734)769-0100

5

# EXHIBIT G

## ARTICLE X. CONTRACTS

### 10.01. Contracts.

The authority to contract on behalf of the City is vested in the City Council and shall be exercised in accordance with the provision of statute and of this Charter.

Whenever it becomes desirable for the City to enter into a contract with a second party for any purpose whatever, such instrument shall be drawn or approved as to form by the City Attorney and certified to by the Finance Director as to sufficiency of appropriated funds.

All contracts, except as otherwise provided for in this Charter, shall be approved by the City Council and shall be signed on behalf of the City by the Mayor and the City Clerk. Copies of all contracts and agreements shall be filed in the office of the City Clerk.

### 10.02. Purchasing and contractual procedure.

The Council shall provide, by ordinance based upon a national standard, for a purchasing procedure to be followed in purchasing City supplies, materials, equipment, contractual services, or other forms of personal property. Before making any such purchase or contract to purchase, competitive bids shall be obtained, except:

(a) in the securing of professional services for the City or,

(b) when the purchasing officer for the City is exempted by the purchasing ordinance because of value or when the City Council shall determine that no advantage to the City would result from competitive bidding.

Purchases shall be made from the lowest responsible bidder meeting specifications, unless the Council shall determine that the public interest would be better served by accepting a higher bid or rejection of all submitted bids. All purchases shall be evidenced by a written purchase order or sales memorandum.

The Council shall provide in the ordinance required by this Section the definition of "lowest responsible bidder," the dollar limit within which the Purchasing Officer of the City may make purchases without the necessity of obtaining competitive bids, and the dollar limit within which purchases may be made without the necessity of Council approval.

The Purchasing Officer shall provide the Council with all additional certifications required by law prior to Council action on the contract and shall report to the Council at an appropriate time on compliance with the terms of the contract.

### 10.03. Modification in contracts.

When it becomes necessary in the prosecution of any work or improvement done under contract to make alterations or modifications in such contract, such alterations or modifications shall be made only upon resolution of the Council. No such order shall be effective until the price to be paid for the material and work, or both, under the altered or modified contract shall have been agreed upon in writing and signed by the contractor and the City Clerk, upon authority of the Council, and a copy of the modification documents filed in the City Clerk's office.

### 10.04. City may perform public work.

The Council shall have power to do any public work or make any public improvement by the employment of the necessary labor and the purchase of the necessary supplies and materials, with separate accounting as to each improvement so made, or to do such work by contract duly let after competitive bidding. Where competitive bids are secured, the City, or any City department qualified to do the work, may enter a bid on an equal basis with other bidders. The Council shall also have power to do any public work or make any public improvement under any legally constituted plan by which the labor is furnished by any other governmental unit, department, or agency of the United States or the State of Michigan, or which is wholly or in part financed by them or either of them.

### 10.05. Estoppel by representation.

No official of the City shall have power to make any representation or recital of fact in any fran-