**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID KIRCHER,

Plaintiff,

v.

Case No. 04-72449
Hon. Gerald E. Rosen

CITY OF YPSILANTI, CHERYL FARMER, CHARLES BOULARD, JON ICHESCO, ROBERT BARNES, DONALD SHELTON, and TIMOTHY CONNORS,

Defendants.
_________________________________/

**OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND FOR SANCTIONS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on October 10, 2006

PRESENT: Honorable Gerald E. Rosen
United States District Judge

## I. INTRODUCTION

Plaintiff David Kircher commenced this case in this Court on July 1, 2004, alleging that the City of Ypsilanti, certain City officials — including mayor Cheryl Farmer, building inspector Charles Boulard, and fire marshal Jon Ichesco — an Ypsilanti landowner, Robert Barnes, and two Washtenaw County Circuit Court judges, Donald Shelton and Timothy Connors, violated his federal constitutional rights through their actions in connection with three state court lawsuits concerning Plaintiff's property in

Ypsilanti. The Court's subject matter jurisdiction rests upon Plaintiff's assertion of federal claims under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

Through three motions now pending before the Court, Defendants seek the dismissal of this action or summary judgment in their favor on a variety of grounds. Defendants Shelton and Connors (the "Judicial Defendants") have invoked the Rooker-Feldman doctrine, judicial immunity, Younger abstention, and claim preclusion as grounds for dismissal of the claims against them. Defendants City of Ypsilanti, Farmer, Boulard, and Ichesco (the "Ypsilanti Defendants") also appeal to the Rooker-Feldman doctrine, Younger abstention, and claim preclusion, and they further contend that any Fifth Amendment takings claim arguably asserted in Plaintiff's complaint is not ripe for federal court adjudication.[1] Finally, apart from these motions seeking dismissal or summary judgment, the Judicial Defendants seek the imposition of sanctions against Plaintiff and his counsel pursuant to Fed. R. Civ. P. 11.

These motions have been fully briefed by the parties, including the submission of various supplemental briefs that are principally directed at subsequent developments in the ongoing state court litigation. Having reviewed the parties' written submissions and the record as a whole, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials, and that oral argument would not assist in the resolution of Defendants' motions. Accordingly, the Court will decide these motions "on

[1]Defendant Barnes has filed a notice of his joinder in the Ypsilanti Defendants' motion.

the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This Opinion and Order sets forth the Court's rulings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The State Court Litigation

As indicated, the allegations of Plaintiff's first amended complaint primarily relate to three state court actions concerning Plaintiff's property in Ypsilanti, Michigan. Accordingly, the Court briefly summarizes these state court suits as characterized in Plaintiff's complaint.

#### 1. 510 W. Cross Street

The first state court action concerns a five-unit apartment house at 510 W. Cross Street, which Plaintiff has owned since at least 1969. Apart from this building, the remainder of the properties on this block are owned by Defendant Robert Barnes, an Ypsilanti landlord. Barnes allegedly offered to buy Plaintiff's property in 2000, but Plaintiff refused to sell. This refusal, in Plaintiff's view, precipitated the Ypsilanti Defendants' alleged attempt to transfer Plaintiff's property to Barnes through other, purportedly unlawful means — specifically, state court litigation.

In particular, on May 15, 2001, Defendant Jon Ichesco, Ypsilanti's fire marshal, brought suit in Washtenaw County Circuit Court under Michigan's fire prevention code, Mich. Comp. Laws § 29.1 *et seq.*, seeking to abate an alleged nuisance on Plaintiff's Cross Street property that purportedly constituted a "fire hazard" under Mich. Comp. Laws § 29.23. This case was assigned to Defendant Washtenaw County Circuit Judge

Donald Shelton. Plaintiff alleges that the jurisdictional predicate to such a suit was lacking, and that Judge Shelton failed to make the determinations required under the Michigan statute.

While this suit was pending, Plaintiff allegedly secured the agreement of the City of Ypsilanti's director of public works, Harry Hutchison, that a certificate of occupancy would be issued for the Cross Street property upon Plaintiff's completion of five specified repairs. Although Plaintiff allegedly undertook these repairs, Defendant Charles Boulard, the Ypsilanti building inspector, allegedly refused in June of 2002 to inspect the premises to confirm these repairs, citing his view that this would be contrary to oral and written orders purportedly issued in the nuisance abatement proceeding.

Shortly thereafter, on June 14, 2002, Judge Shelton issued an order granting the City of Ypsilanti the "exclusive responsibility and right" to make certain repairs to the Cross Street property and obligating Plaintiff to pay for these repairs. Plaintiff cites two alleged defects in this order: (i) that Judge Shelton failed to find a "dangerous or menacing" fire hazard that would warrant an abatement order under Mich. Comp. Laws § 29.23; and (ii) that the City did not solicit competitive bids for making the court-ordered repairs, but instead secured the appointment of Defendant Barnes to perform this work "on payment terms which [we]re grossly above market rates." (First Amended Complaint at ¶ 35.)

Upon undertaking repairs to the property pursuant to the court's order, Barnes sought reimbursement in early 2003 in the amount of $54,345. According to Plaintiff,

however, the Ypsilanti Defendants pressed for additional repairs to the property for the impermissible purpose of making it "economically viable," rather than to merely abate an alleged nuisance. Plaintiff alleges that Judge Shelton implicitly endorsed this goal through an April 8, 2003 order, in which possession of the Cross Street property was to be returned to Plaintiff if he paid the amount owed to Barnes within thirty days. In particular, Plaintiff cites additional language in this order providing that, if Barnes was not paid within thirty days, the City (i) was to "continue to effectuate the repairs necessary to obtain a certificate of occupancy," and (ii) was then authorized to "make commercially reasonable arrangements to rent the premises." Plaintiff alleges that there was no lawful basis under any relevant fire or building code for the City to pursue an "economic viability" goal or seek a certificate of occupancy through the Cross Street litigation, but that Judge Shelton instead should have restored Plaintiff's possession of the property upon finding that all fire hazards had been abated.

As a result of the court's orders, Plaintiff alleges that the Ypsilanti Defendants awarded Barnes an additional contract to effectuate further repairs that far exceed the scope of nuisance abatement and are designed to prevent Plaintiff from regaining ownership and control of the property. Specifically, Plaintiff alleges that Barnes has gutted the property and secured a special-use permit to reconfigure the premises to a fraternity/sorority house, and that he has sought reimbursement of an additional amount in

excess of $150,000 before Plaintiff may reclaim his property.[2]

**2. The Thompson Building**

The second state court suit at issue here concerns Plaintiff's property at 400-412 River Street in Ypsilanti, referred to by the parties as the Thompson Building. In April of 2002, Defendant Ichesco filed a complaint for an order to show cause in the Washtenaw County Circuit Court, alleging that Plaintiff had failed to comply with a 1997 court order entered in two prior consolidated nuisance abatement actions involving the Thompson Building. Again, Plaintiff alleges that this suit was not brought for the limited and legitimate purpose of abating a "fire hazard" within the meaning of Mich. Comp. Laws 29.23, but instead was in furtherance of the City's desire to force the reconfiguration and improvement of the property and advance the impermissible aim of "economic viability." Plaintiff further alleges that this suit lacked a jurisdictional basis. This case, like the Cross Street action, was assigned to Judge Shelton.

On June 14, 2002, Judge Shelton issued an order appointing Defendant Barnes as the receiver for the Thompson Building property, for the purpose of bringing the property into compliance with Ypsilanti's building, fire, and historic district ordinances. Plaintiff alleges that this order lacked the requisite findings as to the types of repairs to be made to the property and the amounts to be expended, but instead impermissibly delegated these

[2]Plaintiff apparently has failed or refused to reimburse Barnes for the repairs, leading Barnes to bring a separate suit seeking to foreclose upon the Cross Street property. In May of 2004, Judge Shelton granted summary judgment in favor of Barnes in this foreclosure action, and also granted summary judgment in Barnes's favor on a counterclaim asserted by Plaintiff.

determinations to Barnes as receiver.

According to Plaintiff, Barnes has used his court-appointed role as receiver to embark upon repairs and improvements that are far in excess of what would be necessary to abate any fire hazard on the property or otherwise comply with any pertinent law or ordinance. Plaintiff alleges, for example, that Barnes has boasted to the media of his plan to add luxury apartments on the top two floors of the building, and to place four or five commercial tenants at the street level. As a result of the "unfettered discretion" enjoyed by Barnes, (First Amended Complaint at ¶ 51), Plaintiff alleges that Barnes has undertaken sweeping repairs for which he has demanded reimbursement in excess of $200,000.

**3. 304-306 Perrin Street**

The third state court action at issue here involves an apartment house owned by Plaintiff and located at 304-306 Perrin Street in Ypsilanti. In July of 2001, the City of Ypsilanti and fire marshal Ichesco filed a nuisance abatement action in Washtenaw County Circuit Court, alleging that this property had been damaged in a 1983 fire but had not been repaired, and further alleging that inspections had revealed numerous building code violations. Once again, Plaintiff alleges that the jurisdictional predicate to such a suit was lacking. This case was assigned to Defendant Washtenaw County Circuit Judge Timothy Connors.

As with the Cross Street property, Plaintiff alleges that Defendant Boulard refused in June of 2002 to inspect the Perrin Street property for purposes of issuing a certificate of

occupancy, citing a purported verbal order by Judge Connors that he not do so. Instead, on July 12, 2002, Judge Connors issued an order appointing Defendant Barnes as successor receiver for the purpose of undertaking "all repairs consistent with all city codes, statutes, ordinances, engineer reports, etc. to bring this property into compliance." (First Amended Complaint, Ex. M., 7/12/2002 Order at 4.)[3]

Again, Plaintiff alleges that this court order impermissibly delegated to Defendant Barnes the judicial function of determining the type and extent of repairs to be made to the Perrin Street property. Plaintiff further alleges that it is evident from the state court complaint that the Ypsilanti Defendants were pursuing far more than mere nuisance abatement, and that they instead sought to reconfigure and upgrade the property. In furtherance of this purpose, Plaintiff alleges that Barnes has exercised his "unfettered discretion" to convert the Perrin Street property from a 4-unit to a 2-unit apartment building, and to demand reimbursement from Plaintiff in the amount of $243,103 in order to avoid foreclosure of the property.

**B. Subsequent Developments in the State Court Proceedings**

As is evident from the foregoing, the various state court suits involving Plaintiff's three Ypsilanti properties were by no means concluded when the present suit was commenced in this Court in July of 2004. The following is a brief summary of

[3]Through a prior November 22, 2001 order, Judge Connors had initially appointed Harry Hutchison of the Ypsilanti building department as receiver, but Hutchison subsequently "indicated to the Court that he can no longer act in that capacity." (Id. at 1.)

subsequent developments in these state court proceedings, at least so far as the Court can glean from the constantly evolving record.

Turning first to the Cross Street property, while Plaintiff's complaint refers exclusively to Judge Shelton's rulings, Plaintiff already had appealed these circuit court orders and secured a decision by the Michigan Court of Appeals before he commenced this federal suit in July of 2004. Specifically, in an unpublished decision dated April 27, 2004, the Michigan Court of Appeals generally affirmed Judge Shelton's rulings with respect to the Cross Street property, remanding only for the limited purpose of requiring the lower court's review and approval of the charges for which Defendant Barnes sought reimbursement from Plaintiff in order to ensure that these charges were "appropriate and reasonable." Ypsilanti Fire Marshal v. Kircher, No. 242697, 242857, 2004 WL 895888, at *6-*7 (Mich. Ct. App. Apr. 27, 2004). In so ruling, the appellate court rejected various challenges that appear quite similar to those advanced in Plaintiff's complaint — *e.g.*, that the circuit court's orders "d[id] not put sufficient restraints on the city" as to the repairs to be performed. See id. at *6.

On remand, Judge Shelton conducted an evidentiary hearing and issued a decision in January of 2005, approving the City's request for reimbursement in the amount of $218,303.32 and finding that the costs incurred in repairing the Cross Street property were reasonable and appropriate. Plaintiff evidently has appealed this ruling, and this

appeal is still pending.[4]

Judge Shelton's rulings with regard to the Thompson Building also were addressed in the above-cited unpublished April 27, 2004 decision of the Michigan Court of Appeals.[5] Specifically, the appellate court affirmed in part and reversed in part, rejecting Plaintiff's contention that the circuit court lacked jurisdiction under Michigan's fire prevention code to appoint a receiver, but agreeing with Plaintiff that Judge Shelton's order impermissibly authorized repairs beyond the scope of nuisance abatement, provided insufficient guidance as to the duties to be performed by Defendant Barnes as receiver, and failed to reserve to the court the power to review and approve any charges to be imposed upon Plaintiff. See Ypsilanti Fire Marshall, 2004 WL 895888, at *4-*5.

In a January 19, 2005 decision upon remand, Judge Shelton found that most, but not all, of the repair costs and fees sought by the City were reasonably and appropriately incurred in a permissible effort to abate nuisances, correct code violations, and otherwise bring the property into compliance with the applicable ordinances and prior court orders. Accordingly, Plaintiff was found to owe the amount of $187,686.38. Plaintiff has appealed this ruling, and it appears that this appeal has been consolidated with the above-

---

[4]As noted earlier, Judge Shelton also granted summary judgment in favor of Defendant Barnes in a foreclosure suit arising from Plaintiff's apparent failure to reimburse Barnes for the costs incurred in repairing the Cross Street property. It appears that Plaintiff also has appealed this decision, and that Plaintiff's two pending appeals concerning the Cross Street property have been consolidated by order of the Michigan Court of Appeals.

[5]Again, Plaintiff's complaint notably fails to mention this appellate court decision handed down before the commencement of this federal suit.

referenced appeals from Judge Shelton's decisions concerning the Cross Street property.[6]

Finally, with regard to the Perrin Street property, the circuit court dismissed the case on July 12, 2004 for lack of progress. Plaintiff evidently has pursued various appeals during the course of the Perrin Street suit, but the Court of Appeals has dismissed them for lack of jurisdiction.[7]

---

[6]The Thompson Building, like the Cross Street property, is also the subject of a separate foreclosure action brought by Defendant Barnes against Plaintiff. Although the circuit court's disposition of this case is not clear from the record, it appears that Plaintiff has taken an appeal in this suit as well, which again has been consolidated with his other appeals concerning the Cross Street property and the Thompson Building.

In addition, Plaintiff has filed a complaint for a writ of superintending control with the Michigan Court of Appeals, seeking an order directing the circuit court to comply with the appellate court's rulings in its unpublished April 27, 2004 decision. The Court of Appeals dismissed this complaint in an unpublished March 9, 2006 decision, finding that Plaintiff's pending appeals with respect to the Thompson Building provided an adequate legal remedy that obviated the need for the appellate court to exercise superintending control. See Kircher v. Washtenaw Circuit Court Judge, No. 262153, 2006 WL 572381, at *1 (Mich. Ct. App. Mar. 9, 2006). The Michigan Supreme Court subsequently denied leave to appeal, and recently denied Plaintiff's motion for reconsideration. See Kircher v. Washtenaw Circuit Judge, 475 Mich. 888, 715 N.W.2d 896 (2006), reconsideration denied, __ N.W.2d __, 2006 WL 2736073 (Mich. Sept. 26, 2006).

[7]Once again, the underlying nuisance abatement action regarding the Perrin Street property has been accompanied by a foreclosure suit brought by Defendant Barnes against Plaintiff on the ground that he failed to reimburse Barnes for the costs incurred in repairing the property. A judgment of foreclosure was entered against Plaintiff, and this ruling was affirmed in an unpublished July 27, 2006 decision by the Michigan Court of Appeals. See Barnes v. Kircher, No. 258127, 2006 WL 2085005 (Mich. Ct. App. July 27, 2006). Although Plaintiff sought to raise a number of challenges to Judge Connors's July 12, 2002 order in the nuisance abatement suit appointing Barnes as successor receiver, the Court of Appeals held that it lacked jurisdiction to address these matters in light of Plaintiff's failure to perfect an appeal from this order. See id. at *1.

## III. ANALYSIS

### A. The Standards Governing Defendants' Motions to Dismiss

Through the present motions, Defendants have moved for the dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In resolving a jurisdictional challenge brought under Rule 12(b)(1), the Court "takes the allegations in the complaint as true," and determines whether the facts as alleged give rise to a claim within the Court's subject matter jurisdiction. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

Similarly, in resolving a motion brought under Rule 12(b)(6), the Court must accept as true the well-pleaded factual allegations set forth in Plaintiff's complaint. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan, 829 F.2d at 12. "Under Rule 12(b)(6), a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." 829 F.2d at 12 (footnote, internal quotations and citations omitted). The Court will apply these standards in considering Defendants' motions.

**B. The Defendant Judges Are Entitled to Absolute Judicial Immunity.**

As one of the grounds for seeking dismissal of the claims against them, the Defendant state court judges, Washtenaw County Circuit Judges Donald Shelton and Timothy Connors, argue that they are entitled to absolute judicial immunity from the present suit brought exclusively under 42 U.S.C. § 1983. In response, Plaintiff contends that judicial immunity extends only to suits for damages, while he seeks only equitable relief in his claims against the Judicial Defendants. Plaintiff's argument, however, overlooks an amendment to § 1983 that was enacted ***fully ten years ago***, and which expressly precludes the award of injunctive relief he seeks against the Judicial Defendants in this case.

The Sixth Circuit has described the immunity from suit enjoyed by judges as follows:

> "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872). This immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights. *See Pierson v. Ray,* 386 U.S. 547, 554-55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court explained: "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication . . . . Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester v. White,* 484 U.S. 219, 226-27, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

> Because "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches," *id.* at 227, 108 S.Ct. 538, judicial immunity has its limits, in the form of two exceptions. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (citations omitted) . . . .

Stern v. Mascio, 262 F.3d 600, 606-07 (footnote omitted).

Plaintiff does not seriously contend that either of these two exceptions to judicial immunity is applicable here. First, it is clear that the Judicial Defendants were acting in their judicial capacity when they took the actions complained of by Plaintiff. Every allegation in the complaint concerning the Judicial Defendants involves a ruling they made in the context of a pending case. Such court orders plainly are judicial actions, see Mann v. Conlin, 22 F.3d 100, 104 (6th Cir. 1994) (observing that orders which "affect the rights only of the individual [parties] in specific judicial proceedings" are "paradigmatic judicial acts"), and Plaintiff does not assert otherwise.

Neither do Plaintiff's allegations establish that the Judicial Defendants acted in the complete absence of all jurisdiction. The Michigan circuit courts over which the Judicial Defendants preside are trial courts of general jurisdiction, and circuit court judges possess "the power to enter orders . . . to effectuate [their] judgments." Mann, 22 F.3d at 105. While Plaintiff has alleged that the nuisance abatements suits brought against him by the Ypsilanti Defendants lacked the necessary "jurisdictional predicate," he acknowledges that Michigan's fire prevention code expressly authorizes such suits to be brought in the

appropriate circuit court, see Mich. Comp. Laws § 29.23, and the record discloses that the Ypsilanti Defendants duly referenced the fire prevention code in the three circuit court complaints brought before the Judicial Defendants. Plaintiff's "jurisdictional" challenge, then, boils down to the claim that there were no "fire hazards" on his properties that could sustain the state court suits, or that the Ypsilanti Defendants were pursuing an agenda different from the mere abatement of nuisances on these properties. (See First Amended Complaint at ¶ 15(a).)

These sorts of challenges, even if meritorious, are insufficient to demonstrate that the Judicial Defendants acted in the complete absence of all jurisdiction, as necessary for them to surrender their judicial immunity. The Michigan circuit courts clearly had subject matter jurisdiction over the nuisance abatement suits brought against Plaintiff and his properties — the "jurisdictional predicate" that Plaintiff insists was lacking would merely dictate the dismissal of the suits for failure to state a valid claim under the fire prevention code, or perhaps the issuance of orders that were more narrowly tailored to the nuisance-abatement purposes for which the suits purportedly were brought. Because subject matter jurisdiction existed and Plaintiff quarrels only with the way in which it was exercised, his allegations do not establish that the Judicial Defendants acted in the complete absence of all jurisdiction. See Stern, 262 F.3d at 607-08.[8]

---

[8]Notably, the Michigan Court of Appeals rejected Plaintiff's jurisdictional challenge to Judge Shelton's rulings in the cases involving the Cross Street property and the Thompson Building. See Ypsilanti Fire Marshal, 2004 WL 895888, at *4. This Court generally must defer to the Michigan appellate court's ruling on this issue of state law, absent some reason (and none is apparent) to believe that the Michigan Supreme Court would decide the issue differently. See

Plaintiff's principal response to the Judicial Defendants' claim of judicial immunity, however, is that this immunity does not extend to pleas for equitable relief. In support of this proposition, Plaintiff cites Pulliam v. Allen, 466 U.S. 522, 541-42, 104 S. Ct. 1970, 1981 (1984), in which the Supreme Court held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." Plaintiff argues that this limitation to judicial immunity applies here, where he seeks only "an equitable order directing that [the Judicial Defendants] not violate the U.S. Constitution." (Plaintiff's Answer to the Judicial Defendants' Motion at ¶ 3.)

This argument would be a good deal more persuasive if not for a 1996 amendment to 42 U.S.C. § 1983 that abrogated the portion of Pulliam upon which Plaintiff seeks to rely. Following this amendment, the statute now provides in pertinent part that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, ***injunctive relief shall not be granted*** unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (emphasis added); see also Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) (recognizing that Pulliam "has been partially abrogated" as a result of this 1996 amendment). Plaintiff has not alleged that the Judicial Defendants violated a declaratory decree or that declaratory relief was unavailable at any relevant time. Accordingly, his request for an order directing the

---

Ziebart International Corp. v. CNA Insurance Cos., 78 F.3d 245, 250-51 (6th Cir. 1996). Thus, it appears that Plaintiff's jurisdictional challenge is not only insufficient to defeat the Judicial Defendants' appeal to judicial immunity, but likely is lacking in merit.

Judicial Defendants to follow the law does not overcome their immunity from the present suit brought under § 1983. See Massey v. Stosberg, No. 04-5344, 136 Fed. Appx. 719, 720 (6th Cir. Feb. 8, 2005); Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999).[9]

**C. Because the State Court Suits Remained Pending When This Action Was Commenced, the Rooker-Feldman Doctrine Does Not Deprive This Court of Subject Matter Jurisdiction.**

As one of the grounds for seeking the dismissal of this action, the Ypsilanti Defendants and the Judicial Defendants alike initially argued that the Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine. Yet, as the Judicial Defendants seemingly recognize in their more recent submissions, it appears that an intervening Supreme Court decision precludes the application of the Rooker-Feldman doctrine under the particular circumstances presented here.

---

[9]While Plaintiff's complaint also includes a plea for declaratory relief against the Judicial Defendants, (see First Amended Complaint at ¶ 24), his response to their motion refers only to a posited order "enjoin[ing]" the Judicial Defendants from "entering and executing orders which violate federally protected rights," (Plaintiff's Answer, Br. in Support at 8). Moreover, Plaintiff has failed to suggest what sort of declaratory relief might appropriately be awarded with respect to the Judicial Defendants in the event that he proves his allegations. Thus, the Judicial Defendants' entitlement to judicial immunity is not overcome by Plaintiff's bare plea for declaratory relief in his complaint.

For what it is worth, the Court finds it inconceivable that any such relief would be forthcoming in this case. Even assuming that the Court were to reach the merits of Plaintiff's various challenges to the Judicial Defendants' rulings — an unlikely prospect, as discussed below — and even assuming that one or more of these challenges was upheld, the Court fails to perceive the need to retain the Judicial Defendants as parties to this action so that the Court could then "declare" the purported errors in their past rulings or the law that should govern any further proceedings. Rather, to the extent that any eventual rulings by this Court have any effect upon the past orders or future proceedings in the state court suits, this Court is fully confident in the ability of the Judicial Defendants to perceive these effects and faithfully apply the law to the matters before them, regardless of whether they are no longer parties to this suit and directly subject to this Court's "declarations."

At first glance, this case would appear to be an excellent candidate for the application of this doctrine. The Supreme Court recently summarized the two decisions, Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303 (1983), from which the Rooker-Feldman doctrine derives its name:

> *Rooker* was a suit commenced in Federal District Court to have a judgment of a state court, adverse to the federal court plaintiffs, "declared null and void." 263 U.S., at 414, 44 S.Ct. 149. In *Feldman*, parties unsuccessful in the District of Columbia Court of Appeals (the District's highest court) commenced a federal court action against the very court that had rejected their applications. Holding the federal suits impermissible, we emphasized that appellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively in this Court. Federal district courts, we noted, are empowered to exercise original, not appellate, jurisdiction. Plaintiffs in *Rooker* and *Feldman* had litigated and lost in state court. Their federal complaints, we observed, essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments. We declared such suits out of bounds, *i.e.*, properly dismissed for want of subject matter jurisdiction.

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S. Ct. 1517, 1521 (2005); see also Community Treatment Centers, Inc. v. City of Westland, 970 F. Supp. 1197, 1212 (E.D. Mich. 1997) (stating that the Rooker and Feldman decisions, "taken together, stand for the proposition that the inferior federal courts lack the authority to perform, in effect, an appellate review of state court decisions").

Similarly, Plaintiff's complaint in this case is, first and foremost, a challenge to various state court rulings in the three suits brought by the City of Ypsilanti and its fire marshal against Plaintiff as the owner of three particular Ypsilanti properties. It is

difficult to see how the allegations of Plaintiff's complaint could be construed as anything other than a collateral attack upon unfavorable rulings in the state court litigation and actions taken by the Ypsilanti Defendants or Defendant Barnes pursuant to these rulings. Under analogous facts, the courts have invoked the Rooker-Feldman doctrine to dismiss a federal suit that effectively seeks to overturn an allegedly erroneous state court judgment. See, e.g., Garry v. Geils, 82 F.3d 1362, 1368-70 (7th Cir. 1996) (holding that the Rooker-Feldman doctrine barred a federal suit alleging that the defendant municipal officials targeted the plaintiffs' property for condemnation to retaliate against the plaintiffs' support of opposing political candidates).

The recent decision in Exxon Mobil, however, highlights an important prerequisite to the application of Rooker-Feldman that is lacking in the present case. As this Court recently observed, Exxon Mobil holds that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Kawecki *ex rel.* Marlowe v. County of Macomb, 367 F. Supp.2d 1137, 1142 (E.D. Mich. 2005) (quoting Exxon Mobil, 125 S. Ct. at 1521-22). The doctrine is not applicable, in contrast, where "there is parallel state and federal litigation," even if a final judgment is entered in state court while the federal suit is still pending. Kawecki, 367 F. Supp.2d at 1142 (quoting Exxon Mobil, 125 S. Ct. at 1526).

As is evident from the foregoing account of the state court litigation, most or all of

the underlying state court suits involving Plaintiff's three Ypsilanti properties were still ongoing at the time this federal action was commenced. Indeed, with regard to the Cross Street property and the Thompson Building, the Michigan Court of Appeals had recently issued a decision reversing in part Judge Shelton's rulings with respect to the Thompson Building and ordering further proceedings as to both this and the Cross Street property.[10] Under these circumstances, where the three state court actions cited in Plaintiff's complaint had yet to reach their conclusion at the time this federal suit was commenced, and where at least some state court proceedings remain pending even as of the present date, the Rooker-Feldman doctrine does not mandate the dismissal of this case for lack of subject matter jurisdiction.

[10]As observed earlier, Plaintiff's complaint notably fails to mention this appellate court decision, which was favorable to him in at least some limited respects. If the Court were to confine itself solely to the incomplete allegations of the complaint, it could readily conclude that the state court proceedings had run their course and that no further avenues of appeal remained available to Plaintiff — a conclusion which, of course, would remove one of the obstacles to the application of the Rooker-Feldman doctrine in this case.

**D. A Stay Is Warranted to Prevent Undue Federal Court Interference with the Pending and Parallel State Court Proceedings.**

As observed in Exxon Mobil, in cases where "there is parallel state and federal litigation" but the Rooker-Feldman doctrine does not apply, "[c]omity or abstention doctrines may [nonetheless] permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." Exxon Mobil, 125 S. Ct. at 1526-27. In this case, Defendants appeal to Younger abstention as an alternative ground for seeking the dismissal of this action. Plaintiff's various responses to Defendants' motions are virtually silent as to the application of this abstention doctrine. Having reviewed the parties' submissions, the Court readily agrees that abstention is warranted, but finds that the case should be stayed rather than dismissed.

Younger abstention derives its name from the Supreme Court ruling in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971). Where this doctrine applies, this Court may not reach the merits of the federal suit, but must stay or dismiss the action pending the final outcome of the state court proceedings. As the Supreme Court has explained:

> *Younger v. Harris* . . . and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying *Younger* abstention have been frequently reiterated by this Court. The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights.

Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S. Ct. 2515, 2521 (1982) (citation and footnote omitted). More recently, the Sixth Circuit observed:

> In our litigious era, multiple lawsuits arising from the same occurrence are commonplace. *Younger* abstention is built upon common sense in the administration of a dual state-federal system of justice in such an era.

Carroll v. City of Mount Clemens, 139 F.3d 1072, 1074 (6th Cir. 1998). Thus, Younger abstention is triggered when a parallel state proceeding "(1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." Carroll, 139 F.3d at 1074.

All of these conditions are satisfied here, and Plaintiff does not contend otherwise, except perhaps as to the third prong of this test. First, there is no doubt that the state court suits qualify as "parallel" to the present action, where Plaintiff's allegations in his federal complaint are almost exclusively concerned with the commencement of the three state court suits concerning his Ypsilanti properties and the subsequent rulings and related developments in these state court proceedings. Indeed, there is a nearly complete overlap between the events and actions at issue in the state court litigation and those at issue here, with virtually all of Plaintiff's allegations in his federal complaint referencing the commencement of the state court suits, rulings in the course of those suits, or actions taken as a result of those rulings. And, of course, the presence of the state court judges as defendants in this action is a fairly strong indicator of an overlap between the state and

federal proceedings. Moreover, it is evident that all, or nearly all, of the state court suits remain pending, with numerous appeals yet to be decided.

It is further apparent that the state court proceedings involve the important state interest of nuisance abatement. This is evident from the provision in Michigan's fire prevention code that authorizes "action[s] for the purpose of abating, removing, correcting, or discontinuing [a] fire hazard." Mich. Comp. Laws § 29.23. Even accepting the truth of Plaintiff's allegations that the state court suits were not motivated by concerns of nuisance abatement, but instead advanced the improper objective of transferring ownership of Plaintiff's property to a "City Hall favorite," Defendant Barnes, (First Amended Complaint at ¶ 14), this would merely change the nature of, rather than diminish, the state interest at stake in the state court proceedings. In particular, the state courts (and especially Michigan's appellate courts) presumably would have a significant interest in ensuring that the state's judicial power has been appropriately exercised and that a court-appointed receiver had properly performed his duties. See Nilsson v. Ruppert, Bronson & Chicarelli Co., 888 F.2d 452, 454 (6th Cir. 1989) (noting that the state "has a great interest" in addressing allegations that its judicial system has been subverted); Kawecki, 367 F. Supp.2d at 1146 (citing "the state probate court's presumed interest in policing the performance of a fiduciary . . . that was appointed by the court itself"); Bortz v. DeGolyer, 904 F. Supp. 680, 684 (S.D. Ohio 1995) (observing that an administrator appointed by a state court serves as an officer of that court, and that a federal court ordinarily should not intercede in the state court's oversight of its officers).

Finally, Plaintiff does not contend that he lacked an adequate opportunity to raise his federal due process challenges in the course of the state court proceedings. To the contrary, as an exhibit to their most recent summary judgment motion, the Judicial Defendants have provided a compilation of the various instances in which Plaintiff has advanced federal constitutional issues in the course of the state court suits involving each of his three properties. (See Judicial Defendants' Motion for Summary Judgment, Exs. A, B, C.) In response, Plaintiff does not deny that he raised these issues, but states only that he was "forced to present his federal constitutional defenses in state court" because of his status as a defendant in the nuisance abatement actions. (Plaintiff's Supplemental Br. at 3.)

Yet, Plaintiff has not cited any authority indicating that it matters, for purposes of Younger abstention, whether the requisite opportunity to raise constitutional issues arises in an offensive or defensive posture. To the contrary, in a decision holding that the doctrine of collateral estoppel applies in § 1983 suits to preclude relitigation of issues decided in a prior state court criminal proceeding, the Supreme Court pointedly observed that there is "no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all." Allen v. McCurry, 449 U.S. 90, 104, 101 S. Ct. 411, 420 (1980) (footnote omitted). In any event, Plaintiff does not stand solely in a defensive posture in the state court litigation. Rather, he has asserted counterclaims in at least some

of the state court suits, and he notably does not contend (i) that he was limited in his ability to do so, or (ii) that he had no opportunity to raise federal constitutional issues in these counterclaims. Accordingly, the Court finds that all of the prerequisites for Younger abstention are present here.

There remains only the question whether this case should be dismissed without prejudice or stayed pending the final resolution of the state court proceedings. The pertinent case law, and particularly the Sixth Circuit's decision in Carroll, supra, points fairly decisively in favor of a stay. Plaintiff is entitled, as a general matter, to pursue his § 1983 claims in a federal forum if he so chooses — assuming, of course, that the litigation of these claims is not barred by some combination of issue and claim preclusion or on some other ground. Moreover, having reviewed the portions of the state court record provided by the parties, the Court cannot say with certainty that Plaintiff's federal constitutional claims have been or invariably will be addressed and resolved in the state court proceedings, or that Plaintiff invariably will be precluded from pursuing his federal claims in this Court by virtue of the issues raised and rulings made in the state court proceedings. Under these circumstances, the Court believes "in the interests of caution" that this case should be stayed rather than dismissed, in order to "protect against the possibility that [Plaintiff] could be deprived of the opportunity to present the merits of [his federal] claims in state court," and in order to protect against the possible running of any applicable statute of limitations. Carroll, 139 F.3d at 1075-76; see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 730, 116 S. Ct. 1712, 1727-28 (1996) (noting that,

under the Supreme Court's abstention decisions, the federal courts have been permitted to stay but not dismiss claims for damages).[11]

**E. The Judicial Defendants Are Entitled to an Award of Rule 11 Sanctions.**

In the final motion pending before the Court, the Judicial Defendants seek an award of sanction against Plaintiff and his counsel under Fed. R. Civ. P. 11. In compliance with the "safe harbor" provision of this Rule, the Judicial Defendants' counsel sent a letter to Plaintiff's counsel more than twenty-one days prior to filing the motion for sanctions, enclosing a copy of this motion and requesting that Plaintiff stipulate to the dismissal of the claims against the Judicial Defendants. See Fed. R. Civ. P. 11(c)(1)(A). When Plaintiff declined to grant this request, the Judicial Defendants filed their motion for sanctions. Upon reviewing this motion and Plaintiff's response, the Court readily concludes that sanctions are appropriate.

---

[11]The Court cautions Plaintiff and his counsel, however, that it will carefully review Plaintiff's submissions to the Court following the conclusion of the state court proceedings to ensure that Plaintiff has identified a good faith, legally supported basis for going forward with his federal § 1983 claims. As a general matter, this Court does not view a § 1983 due process claim as an appropriate vehicle for a federal court to engage in a "second-guessing" review of a complete and thorough course of state court proceedings, including appeals, to ensure that all of the various rulings along the way comported with the federal constitution. On more than one occasion, the Supreme Court has "emphatic[ally] reaffirm[ed] . . . the constitutional obligation of the state courts to uphold federal law, and its . . . confidence in their ability to do so." Allen, 449 U.S. at 105, 101 S. Ct. at 420; see also Stone v. Powell, 428 U.S. 465, 493 n.35, 96 S. Ct. 3037, 3052 n.35 (1976). In addition, this Court already has noted that the doctrines of issue preclusion, see Allen, 449 U.S. at 105, 101 S. Ct. at 420, and claim preclusion, see Migra v. Warren City School District Board of Education, 465 U.S. 75, 85, 104 S. Ct. 892, 898 (1984), will be fully applicable in this case upon the conclusion of the state court proceedings. In light of the extensive overlap between the issues litigated in state court and the allegations in Plaintiff's federal complaint, it appears likely that the state court proceedings will have a considerable preclusive effect upon any further proceedings in this Court.

Under the portion of Rule 11 that is relevant to the present motion, each of an attorney's submissions to the Court carries an implied certification that, "to the best of the [attorney]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2). More generally, "[i]n this circuit, the test for the imposition of Rule 11 sanctions [is] . . . whether the individual's conduct was reasonable under the circumstances." Union Planters Bank v. L & J Development Co., 115 F.3d 378, 384 (6th Cir. 1997) (internal quotation marks and citations omitted); see also Margo v. Weiss, 213 F.3d 55, 64 (2d Cir. 2000) (observing that "Rule 11(b)(2) establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments" (internal quotation marks and citation omitted)).

For the reasons set forth earlier, Plaintiff's opposition to the Judicial Defendants' assertion of judicial immunity lacked any basis in existing law, nor was it supported by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. With respect to any possible claim for damages, Plaintiff acknowledged that the Judicial Defendants were shielded from any such liability by longstanding and well-established immunity law, and that the two limited exceptions to such immunity were not applicable here. Nonetheless, Plaintiff insisted, on the authority of Pulliam v. Allen, 466 U.S. 522, 541-42, 104 S. Ct. 1970, 1981 (1984), that prospective

injunctive relief was available against the Judicial Defendants under § 1983. Similarly, in his response to the Judicial Defendants' motion for sanctions, Plaintiff insists that the orders issued in the state court litigation were "illegal" and violative of due process, and he again maintains — this time without citation to any authority — that injunctive relief may be awarded against judges under these circumstances.

As discussed earlier, a simple review of the plain language of § 1983 as amended ***ten years ago*** reveals the utter lack of merit in Plaintiff's contention. By "ignor[ing] rather than acknowledg[ing] the force of existing law," Plaintiff's counsel can hardly be said to have engaged in an "effort to alter the law" as permitted under Rule 11. Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1082 (7th Cir. 1987). To the contrary, Plaintiff's counsel adopted the "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist." Szabo Food Service, 823 F.2d at 1081 (internal quotation marks and citation omitted). This runs directly counter to the obligation imposed upon an attorney under Rule 11(b)(2). Accordingly, the Court finds that sanctions are warranted here.

It remains only for the Court to determine what sanction would be "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). As suggested in the Rule itself, the Court finds that the Judicial Defendants should be awarded an amount equal to the fees and expenses they reasonably incurred as a result of Plaintiff's violation. See Fed. R. Civ. P. 11(c)(2). This violation, in the Court's view, extends back to the filing of Plaintiff's complaint, because it should

have been evident to Plaintiff's counsel from the inception of this case that Plaintiff's claims against the Judicial Defendants were barred by judicial immunity. Instead, however, Plaintiff's counsel elected to include these claims in the initial pleading in this case, and then to continue to oppose the Judicial Defendants' efforts to secure the dismissal of the claims against them, both on immunity and other grounds. This course of conduct was unreasonable, and warrants a commensurate award of sanctions. Thus, the Judicial Defendants are entitled to recover the entirety of the attorney fees and expenses they reasonably incurred in defending against the claims asserted in this case.[12]

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that the Judicial Defendants' July 28, 2004 Motion for Summary Disposition is GRANTED. In light of this ruling, IT IS FURTHER ORDERED that the Judicial Defendants' April 21, 2006 Motion for Summary Judgment is DENIED AS MOOT.

Next, IT IS FURTHER ORDERED that the Ypsilanti Defendants' September 10, 2004 Motion to Dismiss and/or Stay Action is GRANTED IN PART, to the extent that this motion sought the application of Younger abstention in this case.

Finally, IT IS FURTHER ORDERED that the Judicial Defendants' October 1,

---

[12]As provided in Rule 11 itself, this award must be imposed against Plaintiff's counsel alone, and not Plaintiff, in light of the violation of subdivision (b)(2) of the Rule. See Fed. R. Civ. P. 11(c)(2)(A).

2004 Motion for Sanctions is GRANTED. In light of this ruling, IT IS FURTHER ORDERED that, within ***fourteen (14) days*** of the date of this opinion and order, the Judicial Defendants shall file and serve a statement and supporting materials setting forth the precise amounts of attorneys' fees and expenses claimed to be recoverable in accordance with this opinion and order. Upon service of this statement, Plaintiff shall then have ***fourteen (14) days*** in which to file and serve any challenges to the award sought by the Judicial Defendants. The Judicial Defendants shall then, if they wish, file and serve within ***seven (7) days*** a submission in further justification of the award sought in their initial statement. The Court then will enter an order determining an appropriate monetary sanction under the circumstances.

Dated: October 10, 2006

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 10, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager